[No. 55228-7-I. Division One. July 24, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT EARL GRAY, *Appellant*.

548

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah A. Dwyer* and *Catherine M. McDowall, Deputies,* for respondent.

¶1 AGID, J. — Under RCW 26.50.110(5), a conviction for violating a no-contact order (NCO) issued under certain statutes is a felony if the offender has at least two prior convictions for violating NCOs issued under those same statutes. A jury convicted Robert Gray of domestic violence violation of an NCO and returned a special verdict finding that he had two prior convictions for violating NCOs. Gray appeals, arguing that the statutory authority for the previously-violated NCOs is an essential element of felony violation of an NCO that must be found by the jury. In *State v. Carmen,* we ruled that the question whether the prior convictions qualify as predicate convictions under the statute is a threshold evidentiary determination properly left to the court.[1] The Supreme Court recently approved this holding in *State v. Miller.*[2] Because the statutory authority for the previously-violated NCOs dictates whether they are

---

[1] *State v. Carmen,* 118 Wn. App. 655, 663, 77 P.3d 368 (2003), *review denied,* 151 Wn.2d 1039 (2004).

[2] 156 Wn.2d 23, 123 P.2d 827 (2005).

admissible, it is a question of law for the court in its gatekeeping capacity, not an essential element for the jury. In addition, Gray waived this issue by failing to object when the State offered proof of his prior convictions and the court admitted the evidence. We affirm.

## FACTS

¶2 On the morning of March 18, 2004, Roy Hance was at a laundromat when he noticed a woman putting clothes in a washing machine while a man with a cane spoke into her ear. Hance then saw the man strike the woman in the leg with his cane hard enough that her leg buckled and she had to grab a laundry cart to keep from falling down. The man continued talking into her ear and hit her twice in the arm with the back of his hand. Hance could not hear what the man was saying. After waiting to see if the man was going to strike the woman again,[3] Hance stepped outside and called 911.

¶3 When the police arrived Hance told them what happened and identified the man and woman. Police talked to both the man, Robert Earl Gray, and the woman, Vanessa Jenkins. Jenkins said she had a relationship with Gray, but she denied that he hit her and refused to give a statement. Gray said that he had known Jenkins for a long time and that she had approached him at the laundry and asked to help him. After learning there was a current NCO issued by King County Superior Court prohibiting Gray from contacting Jenkins, the police arrested Gray. The State charged him with domestic violence felony violation of an NCO, alleging that he had two previous convictions for violating NCOs. Normally a gross misdemeanor,[4] violation of an NCO is a felony if the defendant has two or more previous

---

[3] Hance testified that he was going to intervene if the man struck the woman again.

[4] RCW 26.50.110(1).

convictions for violations of NCOs issued under certain statutes.[5]

¶4 At trial, Hance testified to the events of March 18, 2004. The State introduced exhibit 6, a judgment and sentence order from Seattle Municipal Court, and exhibit 7, a statement of defendant on plea of guilty, as evidence of Gray's previous convictions for violating NCOs. Gray did not object to admission of these documents. After the State rested, Gray moved to dismiss the allegation that he had two prior convictions for violating NCOs issued under the listed statutes. He argued the State failed to offer proof that his Seattle Municipal Court conviction was based on an NCO issued under one of the requisite statutes. The court denied the motion, ruling that *Carmen* held that the statutory authority for the previously-violated NCOs is a question of law for the court, not an essential element the jury must find.

¶5 The jury convicted Gray of domestic violence violation of an NCO and returned a special verdict finding that he had twice been previously convicted for violating NCOs. Before sentencing, Gray again moved to dismiss on the same basis as his previous motion. The trial court again denied the motion but continued sentencing for 30 days to give Gray an opportunity to seek discretionary review before this court on the issue of whether *Blakely*[6] affected *Carmen*. Gray did not seek discretionary review, and he was ultimately sentenced within the standard range for domestic violence felony violation of an NCO. He now appeals.[7]

DISCUSSION

¶6 RCW 26.50.110(5) states:

A violation of a court order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid

---

[5] RCW 26.50.110(5).

[6] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[7] Shortly before this case was to be heard, the Washington Supreme Court decided *Miller*, 156 Wn.2d 23. We continued Gray's case and asked both parties to provide supplemental briefs addressing *Miller*'s impact, if any, on this case.

foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.52.020. . . . [8]

Gray argues that the statutory authority for the previously-violated NCOs is an essential element which must be found by the jury beyond a reasonable doubt.[9] We held otherwise in *Carmen*, which the Supreme Court recently addressed in *Miller*.

¶7  Gray contends *Miller* does not affect this case and we should disagree with *Carmen* based on the principles discussed in *Blakely*, as did Division Two of this court in *State v. Arthur*.[10] Assuming we agree with him, he maintains insufficient evidence supports his conviction because the State failed to prove the statutory authority for one of the previously-violated NCOs and his sentence violated *Blakely* because it was based on facts not found by the jury. The State argues *Miller* essentially affirmed *Carmen* and Gray's argument therefore does not raise a question of evidentiary sufficiency. Rather it presents a question of law, namely, whether the trial court properly ruled that the previously-violated NCOs were issued under statutes listed in RCW 26.50.110(5). It also asserts Gray waived any argument by failing to timely object to admission of his prior convictions.

## I. Validity of *State v. Carmen*

¶8  In *Carmen*, the trial court refused to give the defendant's proposed "to-convict" instruction which included the statutory authority of the previously-violated NCOs as an

---

[8] RCW 26.50.110(5).

[9] Due process requires the State to prove the essential elements of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Summers*, 120 Wn.2d 801, 817, 846 P.2d 490 (1993) (citing *In re Pers. Restraint of Lile*, 100 Wn.2d 224, 226-27, 668 P.2d 581 (1983)).

[10] 126 Wn. App. 243, 108 P.3d 169 (2005).

element, ruling that the statutory authority for those convictions was a question of law for the court. At sentencing, the court reviewed municipal court files on the previous convictions and concluded they were based on violations of NCOs issued under listed statutes. We affirmed, holding that the jury found beyond a reasonable doubt the fact that elevated Carmen's crime to a felony, his two previous convictions for violation of an NCO, so *Apprendi* was not implicated.[11] We reasoned that

> [b]ased on this finding, the charge could properly be sentenced as a felony, provided that the orders underlying the prior convictions were issued pursuant to one or more of the pertinent statutes. The only question determined by the trial court was whether the convictions relied upon by the jury actually were based on violations of protection orders issued under one of the statutes listed in RCW 26.50.110(5). This was properly a question of law for the court.[12]

We also said the trial court should have recognized that the requirement that the previously-violated NCOs be issued under one of the listed statutes "relates to the *admissibility* of the State's proof of the prior convictions, rather than to an essential element of the felony crime."[13]

¶9 In *Arthur*, the State charged the defendant with felony violation of an NCO and offered judgments and sentences showing prior convictions for violating an NCO,

---

[11] *Carmen*, 118 Wn. App. at 662. *Apprendi* established that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[12] *Carmen*, 118 Wn. App. at 663 (citation omitted). Questions of law are for the court, not the jury, to decide. *Miller*, 156 Wn.2d at 31 (citing *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995)).

[13] *Carmen*, 118 Wn. App. at 664. We explained further:

> Put another way, RCW 26.50.110(5) raises an evidentiary barrier to the admission of evidence of the two prior convictions in order to prove the felony offense unless the prior convictions qualified as predicate convictions as defined in the statute. The very relevancy of the prior convictions depended upon whether they qualified as predicate convictions under the statute. If they had not so qualified, the jury never should have been permitted to consider them.

*Id.* at 664.

but those documents did not indicate the statutory authority under which they were issued. Division Two held there was insufficient evidence of the predicate convictions because the statutory authority for the previously-violated NCOs is an essential element of the felony offense. It expressly disagreed with *Carmen*, ruling that the predicate prior convictions, including the statutory authority for those convictions, are not *Apprendi* prior convictions because "the statute does not state that a conviction with the predicate offenses will be punished as a class 'C' felony" but rather "that it 'is a class "C" felony.' "[14] In contrast, *Carmen* treated the existence of the predicate convictions themselves as essential elements for the jury but not the statutory authority for the NCOs underlying those convictions.[15]

¶10 In *Miller*, the defendant argued that the validity of the current NCO he allegedly violated was an element of felony violation of an NCO under RCW 26.50.110(5).[16] Because RCW 26.50.110 does not expressly state that a "valid" order is an element of the crime of violating an NCO, the Supreme Court considered whether validity was an implied element. It noted *Carmen*'s holding that the evaluation of an underlying NCO was a question of law for the court and cited *Arthur* as disagreeing with *Carmen*. It then stated that "*Carmen* also noted, properly, that '[t]he very relevancy of the prior convictions depended upon whether they qualified as predicate convictions under the statute. If they had not so qualified, the jury never should have been permitted to consider them.' "[17]

¶11 The court held the validity of the NCO was not an element of the crime. It explained that

issues relating to the validity of a court order (such as whether the court granting the order was authorized to do so, whether

---

[14] *Arthur*, 126 Wn. App. at 247 (quoting RCW 26.50.110(5)).

[15] *Carmen*, 118 Wn. App. at 667-68.

[16] *Miller*, 156 Wn.2d at 27.

[17] *Id.* at 30 (alteration in original) (quoting *Carmen*, 118 Wn. App. at 664).

the order was adequate on its face, and whether the order complied with the underlying statutes) are uniquely within the province of the court. Collectively, we will refer to these issues as applying to the "applicability" of the order to the crime charged. An order is not applicable to the charged crime if it is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order. The court, as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged. Orders that are not applicable to the crime should not be admitted. If no order is admissible, the charge should be dismissed.[18]

■ ¶12 Gray argues *Miller* stands only for the proposition that the validity of the *current* NCO is not an essential element of the crime of felony violation of an NCO. But *Miller* explicitly approved *Carmen*'s holding that whether the prior convictions qualified as predicate convictions under the statute was a threshold determination of relevance, or applicability, properly left to the court. And because RCW 26.50.110(5) provides that the statutory authority for the previously-violated NCOs determines whether the prior convictions qualify as predicate convictions under RCW 26.50.110(5), it is, as we ruled in *Carmen*, a question of law for the court.[19]

¶13 *Miller*'s "applicability" reasoning applies equally to issues of law about previously-violated NCOs. Whether the current NCO and the previously-violated NCOs are admissible to support a felony charge under RCW 26.50.110(5) depends on whether they were issued under the listed

---

[18] *Id.* at 31 (footnote omitted).

[19] As in *Carmen*, the trial court here did not determine whether the previously-violated NCOs were issued under the listed statutes until sentencing. While this is not the proper procedure because this determination should be made before admitting the previous convictions, it is not a fatal flaw warranting reversal. *See Carmen*, 118 Wn. App. at 668.

statutes.[20] Acting in its "gatekeeping" capacity, a court must make this determination before the jury is allowed to hear the evidence. Under *Miller*, this applicability determination is "uniquely within the province of the court."[21]

¶14 In sum, prior convictions for violating NCOs are only relevant to prove felony violation of an NCO under RCW 26.50.110(5) if the previously-violated NCOs were issued under the listed statutes. *Carmen* and *Miller* establish that the statutory authority for those NCOs is not an essential element of the crime to be decided by the jury but rather a threshold determination the court makes as part of its "gate-keeping function" before admitting the prior convictions into evidence for the jury's consideration.[22] *Miller* resolved the *Carmen-Arthur* dispute in *Carmen*'s favor, and we agree with the reasoning in both cases. We therefore decline to apply *Arthur* here.

¶15 Nor does *Blakely* affect *Carmen*. In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[23] *Blakely* clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."[24]

¶16 *Blakely* does not apply to or resolve the conflict between *Carmen* and *Arthur*. It merely clarified that the court could not impose a sentence more severe than the facts found by the jury would authorize. It does not shed any light on the question whether a given issue is an essential element

---

[20] This is in addition to other issues bearing on the validity/applicability of any NCO, including whether it is issued by a competent court, statutorily sufficient, and clear or adequate on its face. *See Miller*, 156 Wn.2d at 31.

[21] *Id.*

[22] *See id.*

[23] *Apprendi*, 530 U.S. at 490.

[24] *Blakely*, 542 U.S. at 303.

of the crime for the jury to find or a question of law for the court. And here, as in *Carmen*, the jury found the fact necessary to elevate Gray's crime to a felony: he had two prior convictions for violating NCOs. As we stated in *Carmen*, "[t]he only question determined by the trial court was whether the convictions relied upon by the jury actually were based on violations of protection orders issued under one of the statutes listed in RCW 26.50.110(5)."[25] Like the validity issue raised and decided in *Miller*, this was properly decided as a question of law for the court. *Blakely* is not implicated.

## II. Waiver of Objection

¶17 In *Carmen*, we held the defendant "waived any objection by failing to object to the admission . . . of the certified copies of his prior convictions on grounds of their statutory validity."[26] The State argues Gray waived review by failing to timely object to the admission of the Seattle Municipal Court judgment and sentence. Gray readily admits he did not challenge the admissibility of the State's evidence at trial, choosing instead to rely both at trial and on appeal on his argument that the State did not present evidence upon which a jury could find that both previously-violated NCOs were issued under the listed statutes.

¶18 To assign error to a ruling that admits evidence, a party must raise a timely objection on specific grounds.[27] To be timely, the party must make the objection at the earliest possible opportunity after the basis for the objection becomes apparent.[28] Gray, like the defendant in *Carmen*, could have objected to admission of the Seattle Municipal Court judgment and sentence establishing one of his prior convictions because that document did not state on its face the statutory basis for issuing the NCO he was

---

[25] *Carmen*, 118 Wn. App. at 663.

[26] *Id.* at 668.

[27] ER 103(a)(1).

[28] *State v. Jones*, 70 Wn.2d 591, 597, 424 P.2d 665 (1967).

convicted of violating.[29] By waiting until the State rested to move to dismiss based on the inadequacy of the judgment and sentence, rather than objecting to that document's admissibility under RCW 26.50.110(5) in the first instance, Gray waived any objection.

¶19 Even if we considered Gray's argument that the Seattle Municipal Court judgment and sentence did not provide a basis on which the trial court could determine whether that prior conviction was based on an NCO issued under a listed statute, we would disagree.[30] Gray contends the Seattle Municipal Court NCO (Seattle NCO) was inadequate because the statutory basis for it was not offered by the State and the State did not prove that it was issued under a listed statute. This is a question of law, which we review de novo.[31]

¶20 First, the trial court did not err by going outside the State's evidence to determine whether the Seattle Municipal Court conviction was based on an NCO issued under a listed statute. We approved of a similar trial court inquiry in *Carmen*, stating, "the trial court's posttrial examination of the records cured the evidentiary gap in any event."[32]

¶21 The Seattle NCO states that Gray, "[h]aving been charged with a domestic violence offense and pursuant to Seattle Municipal Code [(SMC)] 12A.06.130," was to have no contact with Jenkins. It also provides that a violation of the NCO "is a criminal offense under Seattle Municipal Code 12A.06.180, and chapter 26.50 RCW, and will subject a violator to arrest." The State argues that since a criminal

---

[29] *See Carmen*, 118 Wn. App. at 663.

[30] We note that the difficulty even a court can have in determining the legal basis for a Seattle Municipal Court NCO demonstrates that determining the statutory authority for an NCO may require legal analysis well beyond the average juror's understanding and our ability to instruct them on the parameters for the ruling. This is another reason why the issue is and should be a question of law for the court.

[31] *State v. Schultz*, 146 Wn.2d 540, 544, 48 P.3d 301 (2002).

[32] *Carmen*, 118 Wn. App. at 668.

offense under chapter 26.50 RCW necessarily requires the violation of an NCO issued under one of the state statutes listed in RCW 26.50.110(5), the Seattle NCO was issued under a listed statute. It maintains the Seattle Municipal Court issued the NCO after the city filed a domestic violence charge against Gray, so the NCO must have been issued under chapter 10.99 RCW. Gray argues that simply because the NCO warns a violation is an offense under chapter 26.50 RCW, this does not mean the NCO was issued under chapter 26.50 RCW.

¶22 RCW 26.50.110(1) provides that a violation of an NCO is a criminal offense "[w]henever an order is granted under this chapter [26.50], chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020."[33] The plain language of the statute demonstrates that a violation of an NCO that is a criminal offense under chapter 26.50 RCW necessarily means that the NCO was issued under the authority of one of the listed state statutes, even if the NCO itself lists only the local statutory authority. Gray does not dispute the State's contention that the Seattle NCO must have been issued under chapter 10.99 RCW, a listed statute, in conjunction with SMC 12A.06.130.

¶23 SMC 12A.06.130(A) and RCW 10.99.040(3) both provide that at the time of arraignment, "the court shall determine whether a no-contact order shall be issued or extended." RCW 10.99.045(3) provides that at the time of a domestic violence defendant's initial appearance in court, the court must determine the necessity for imposing an NCO. The statutory basis for the Seattle NCO under state law was either RCW 10.99.040(3) or RCW 10.99.045(3), so it was necessarily issued under one of the statutes listed in RCW 26.50.110(5).

¶24 We affirm.

SCHINDLER, A.C.J., and BECKER, J., concur.

Review denied at 160 Wn.2d 1008 (2007).

---

[33] RCW 26.50.110(1).